## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

**GUAMAR BAFEL DENG,**

       **Petitioner,**

**v.**                                                    **Civil Action No. 2:20-cv-199**

**JEFFREY CRAWFORD,**

       **Respondent.**

## REPORT AND RECOMMENDATIONS

Since October 1, 2019, Petitioner Guamar Bafel Deng ("Petitioner" or "Deng") has been held in federal immigration detention at the Immigration Center of America Farmville Detention Center ("ICA Farmville"). He now petitions the court for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his continued detention under 8 U.S.C. § 1226(c) without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. As a remedy, he seeks immediate release from detention or an expedited bond hearing. Petitioner further seeks to amend his Complaint to include additional parties as Respondents.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), the assigned district judge referred the motion to me for a report and recommendation. Because Respondent Crawford is Petitioner's immediate custodian and can effectuate any relief granted, I recommend that the court DENY Petitioner's leave to amend to add additional parties. However, I conclude that Petitioner's due process claim has merit and, for the reasons explained in detail below, recommend that the court GRANT Petitioner's Motion for an expedited bond hearing.

1

## I.  STATEMENT OF THE CASE

**A.      Overview of the Detention Process Under 8 U.S.C. § 1226**

8 U.S.C. § 1226 governs the arrest and detention of aliens pending removal proceedings.

See 8 U.S.C. § 1226.  While § 1226(a) authorizes the Attorney General to decide whether to detain

or release an alien, § 1226(c) states that the "Attorney General shall take into custody any alien

who" is convicted of certain crimes, including crimes of moral turpitude and aggravated felonies,

and that such aliens may be released:

> only if the Attorney General decides pursuant to section 3521 of title 18, United States
> Code, that release of the alien from custody is necessary to provide protection to a witness,
> a potential witness, a person cooperating with an investigation into major criminal activity,
> or an immediate family member or close associate of a witness, potential witness, or person
> cooperating with such an investigation. Id. § 1226(c)(2).

Additionally, in order to obtain release under § 1226(c), a detainee must "satisfy[y] the

Attorney General that the alien will not pose a danger to the safety of other persons or of property

and is likely to appear for any scheduled proceeding."  Id.  Congress intended the mandatory

detention under § 1226(c) to limit the number of aliens convicted of crimes who did not appear for

their deportation proceedings and to prevent them from committing additional crimes pending

proceedings.  See Demore v. Hyung Joon Kim, 538 U.S. 510, 518-21 (2003).

**B.      Factual and Procedural Background**

Deng is currently being held pursuant to § 1226(c), after being charged with removability

under § 1227(a)(2)(B)(i), for violating the law regarding controlled substances, other than a single

offense of 30 grams or less of marijuana for one's own use. Fed. Resp't Resp. in Opp'n to the Pet.

for the Writ of Habeas Corpus (ECF No. 15, at 4) ("Resp't Resp.").  He originally filed a pro se

Petition for a Writ of Habeas Corpus on April 13, 2020.  See Pet. for a Writ of Habeas Corpus

under 28 U.S.C. § 2241 (ECF No. 1) ("Pet.").  Deng subsequently obtained counsel who filed a

Supplemental Petition for a Writ of Habeas Corpus on August 7, 2020. Pet.'s Supp. Pet. for a Writ of Habeas Corpus (ECF No. 12) ("Amend. Pet.").[1]  Respondent filed a response to the amended Petition on August 17, 2020, which Petitioner replied to on August 20, 2020. Resp't Resp. (ECF No. 15); Pet.'s Repy Resp't Resp. (ECF No. 19) ("Pet.'s Reply").

The original and Fist Amended Petition both list Jerry Crawford, the Director of ICA Farmville, as Respondent. See Pet. (ECF No. 1) ("Jerry Crawford et al."); Amend. Pet. (ECF No. 12) ("Jerry Crawford et al.").  Petitioner then filed a motion for leave to file a second amended petition to add "inadvertently omitted" necessary parties. Pl.'s Mot. for Leave to File Second Amend. Pet. to Add Necessary Party (ECF No. 17) ("Mot. to Amend.").  Respondent contested Petitioner's motion for leave to amend to add additional parties arguing Deng's immediate custodian is the only party necessary to award complete relief. See Fed. Resp't Resp. in Opp'n to Pet.'s Mot. for Leave to File Second Amend. Pet. to Add Necessary Party (ECF No. 21) ("Resp't Resp. Amend.").  The court now considers both Petitioner's motion for leave to amend and the underlying petition for a writ of habeas corpus.[2]

---

[1] This Petition was labeled as a Supplemental Petition. However, Petitioner's Counsel communicated to Respondent's Counsel that Petitioner deems the petition to be an amended petition. Mot. to Amend. (ECF No. 17, at 2); Perino Email (ECF No. 15-1).

[2] On August 10, 2020, Petitioner also filed for expedited consideration, and the court held a telephonic hearing on August 21, 2020. See Pet.'s Mot. Expedited Telephonic Hr'g (ECF No. 13). Petitioner's request for an expedited telephonic hearing was based in part on the number of cases of COVID-19 at ICA Farmville where Petitioner is detained. See Pet.'s Mot. Expedited Telephonic Hr'g (ECF No. 13). But since this motion was filed, the facility has continued to implement precautions to prevent the spread of COVID-19. See Trump Decl. ¶ 33-41 (ECF No. 15-2, at 9-10) (discussing precautions); Ex. A of Mot. for Leave to File Supp. Decl., Santos Garcia et al. v. Wolf et al., 1:20-cv-00821-LMB-JFA (E.D. Va . Aug. 28, 2020) ¶ 3-4 (ECF No. 63-1) (noting that the Virginia Department of Health plans to close its outbreak investigation at ICA Farmville as the facility had gone two incubation cycles (28 days) without any new cases). Additionally, during the telephonic hearing, the parties acknowledged that Petitioner was tested for COVID-19. In light of these developments, and the relief recommended in this report, I do not address further the need for expedited consideration.

To briefly summarize, Deng is a native of Sudan who was 15 years-old when he entered the United States in 1998 with his parents and siblings under refugee status. Amend. Pet. (ECF No. 12, at 6); Trump Decl. ¶ 4 (ECF No. 15-2, at 2). During his residency in the United States, he has been convicted of four crimes. Amend. Pet. (ECF No. 12, at 6). On March 3, 2011, Petitioner was convicted in the Superior Court of Cobb County, Georgia, of possession of more than one ounce of marijuana, possession of a firearm while possessing marijuana, and giving a false name to the police. Amend. Pet. (ECF No. 12, at 6); Trump Decl. ¶ 6 (ECF No. 15-2, at 2). Petitioner received sentences of twelve months and twenty-four months to run concurrently. Amend. Pet. (ECF No.12, at 6). While in state custody, on September 20, 2011, Petitioner was served with a Notice to Appear ("NTA") charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(i) and 8 U.S.C. § 1227(a)(2)(B)(i). Trump Decl. ¶ 7 (ECF No. 15-2, at 2-3). However, the Georgia Department of Corrections released Petitioner before his scheduled immigration hearing and the Immigration Court then closed Petitioner's case. Id. ¶ 9 (ECF No. 15-2, at 3).

On March 28, 2017, Petitioner was charged with the sale or distribution of marijuana in Fairfax County, Virginia. Amend. Pet. (ECF No. 12, at 6). During these proceedings, Deng was also charged with a failure to appear and was later arrested on an outstanding bench warrant. Amend. Pet. (ECF No. 12, at 6); Trump Decl. ¶ 12 (ECF No. 15-2, at 4). On September 30, 2019, he pled guilty to marijuana distribution and was sentenced to 60 days of time served, with four months suspended. Amend. Pet. (ECF No. 12, at 6). Upon his release, Petitioner was taken into U.S. Immigration and Customs Enforcement ("ICE") custody and transferred to ICA Farmville where he has remained since October 1, 2019. Id. (ECF No. 12, at 7).

On October 11, 2019, the U.S. Department of Homeland Security ("DHS") notified the Atlanta Immigration Court of Petitioner's detention and moved for a change of venue to Arlington, Virginia. Trump Decl. ¶ 15 (ECF No. 15-2, at 4). From November 2019 through February 2020, DHS repeatedly requested updates on this motion. Id. ¶ 16. DHS also filed an additional Motion to Change Venue on January 3, 2020. Id. ¶ 17. DHS's motion to change venue was finally granted on February 12, 2020. Id. ¶ 18. The following day, Petitioner received an Additional Charges of Inadmissibility / Deportable Form (Form I-261), which withdrew the charge of deportability under 8 U.S.C. § 1227(a)(2)(A)(i). Id. ¶ 19 (ECF No. 15-2, at 5).[3] Three times in April and May of 2020, DHS requested information on a hearing date for Petitioner from the Arlington Immigration Court. Id. ¶ 20. Petitioner received a hearing before the Arlington Immigration Court via video teleconference on May 26, 2020. Id. ¶ 21. At this hearing, Petitioner was granted additional time to find an attorney. Id. On June 16, 2020, Petitioner's case was reset for a competency hearing, as Petitioner had previously filed medical records to inform the court that he suffered from Post-Traumatic Stress Disorder ("PTSD") symptoms, such as flashbacks and concentration problems, which could affect his case. Id. ¶ 22; Amend. Pet. (ECF No. 12, at 7). Petitioner was found competent and was given additional time to find an attorney on July 8, 2020 and again on July 23, 2020. Trump Decl. ¶ 23 (ECF No. 15-2, at 5). Throughout these hearings it was unclear to DHS whether Deng would contest removal, as he did not respond to his charging document or identify any removal relief for which he may have been eligible. Resp't Resp. (ECF No. 15, at 5).

---

[3] The Declaration of Paul Trump states that the charge of removability that was withdrawn was under "8 U.S.C. § 1227(a)(2)(A)(iii)." Id. ¶ 19 (ECF No. 15-2, at 5). However, this declaration previously stated that Deng was subject to detention under § 1227(a)(2)(A)(i). Id. ¶ 7 (ECF No. 15-2, at 2-3). Additionally, § 1227(a)(2)(A)(iii) addresses aggravated felonies rather than crimes of moral turpitude. 8 U.S.C. § 1227(a)(2)(A)(iii).

On August 13, 2020, Deng appeared before the Arlington Immigration Court via video-teleconference with counsel from the Immigration Justice Clinic at American University Washington College of Law.  Trump Decl. ¶ 26 (ECF No. 15-2, at 6); Amend. Pet. (ECF No. 12, at 8).  At this hearing, the Immigration Court informed DHS that Petitioner had filed a pro se Motion to Terminate his removal proceedings, which was not served on DHS.  Id.  Having obtained counsel, Petitioner now asserts that he will  continue to contest removal and will be prepared to move forward with his case in October or November of 2020.  Amend. Pet. (ECF No. 12, at 8).  Deng intends to contest his removal by filing a 209(c) waiver claim, which permits refugees to adjust their status to lawful permanent residents despite prior criminal convictions.  Id.  Deng's counsel argues his "deep family ties, long residence, and fear of persecution if returned to Sudan" weigh in favor of his 209(c) claim.  Id.

## II. ANALYSIS

### A. The Court Should Deny Petitioner Leave to Add Additional Respondents Due to the Immediate Custodian Rule

A party's ability to amend a complaint is governed by Rule 15 of the Federal Rules of Civil Procedure.  Harbeck v. Smith, 814 F. Supp. 2d 608, 633 (E.D. Va. 2011).  Under Rule 15, a party who has already amended its pleading once as a matter of course can file another amendment "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  While, "[t]he court should freely give leave when justice so requires," id., the court may deny leave if the amendment is "futile."  Save Our Sound OBX, Inc. v. N.C. DOT, 914 F.3d 213, 228 (4th Cir. 2019) (citation omitted).  "A proposed amendment is futile when it is clearly insufficient or frivolous on its face," or it "would not survive a motion to dismiss." Id. (internal quotations and citations omitted).  Respondent argues that granting leave to amend is futile, as the "immediate custodian rule" establishes "that there is generally only one proper respondent to a . . .  habeas

6

petition," the warden or director of the facility, and Mr. Crawford is already named as Respondent. Resp't Resp. Amend. (ECF No. 21, at 8) (quoting Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004)). I agree.

In Rumsfeld v. Padilla, the Supreme Court established that the "immediate custodian rule is "the default rule" in "habeas challenges to present physical confinement." Rumsfeld, 542 U.S. at 435. The immediate custodian refers to "the warden of the facility where the prisoner is being held" and not "some other remote supervisory official." Id. While the Court declined to resolve the issue of whether the Attorney General or other supervisory officials were proper habeas respondents in an immigration context, id. at 435 n.8, the majority of circuits have held that the immediate custodian rule also applies in the immigration context. See Nken v. Napolitano, 607 F. Supp. 2d 149, 161 & n.7 (D.C. Cir. 2009) ("[T]he immediate custodian rule generally applies to habeas petitions brought by detained aliens awaiting deportation," but noting that the First and Six Circuits have acknowledged the possibility of exceptions in "extraordinary circumstances"); Kholyavskiy v. Achim, 443 F.3d 946, 949-54 (7th Cir. 2006) (dismissing a detainee's habeas petition for failing to name the warden of the detention facility as the immediate custodian); Roman v. Ashcroft, 340 F. 3d 314, 322 (6th Cir. 2003) ("Although we conclude that the immediate custodian rule generally applies to alien habeas corpus petitioners, we note the possibility of exceptions to this rule."); Vasquez v. Reno, 233 F.3d 688, 696 (1st Cir. 2000) (holding that the Attorney General is not normally a proper respondent in immigration habeas cases, but acknowledging that he could be in "extraordinary circumstances"); Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994) (holding that the warden alone is the custodian for purposes of habeas petitions); see also Henderson v. INS, 157 F.3d 106, 124-28 (2d Cir. 1998) (discussing but not deciding whether the AG could appropriately be cited as custodian in these cases); Masingene v. Martin,

7

424 F. Supp. 3d 1298, 1301 (S.D. Fl. Jan. 24, 2020) (noting that the Eleventh Circuit has not weighed in on the issue). The Fourth Circuit, however, has yet to address this issue, and courts within the circuit are divided. See Wamala v. United States Immigration & Customs Enf't, No. 3:19-cv-00067-FDW, 2019 U.S. Dist. LEXIS 211589, at *2 (W.D.N.C. Dec. 7, 2019) (adopting the immediate custodian rule); Palacios v. Sessions, No. 3:18-CV-0026-RJC-DSC, 2018 U.S. Dist. LEXIS 169205, at *10-11 (W.D.N.C. June 26, 2018) (noting that the Fourth Circuit has not addressed whether the immediate custodian rule applies in the case of a habeas petition by an alien detained pending deportation); Romero v. Evans, 280 F. Supp. 3d 835, 841-42 (E.D. Va. Nov. 17, 2017) (declining to dismiss higher level officials as Respondents); Jarpa v. Mumford, 211 F. Supp. 3d 706, 725 (D. Md. Sept. 30, 2016) (holding both the Attorney General and the DHS Secretary to be proper respondents); Ming Hui Lu v. Lynch, 1:15-cv-1100-GBL-MSN, 2015 WL 8482748, at *6 (E.D. Va. Dec. 7, 2015) (adopting the Third Circuit's reasoning in Yi and applying the immediate custodian rule in the case of a detainee challenging his removal).

Courts that decline to hold that supervisory officials are proper parties to habeas petitions, recognize that there is not a "principled distinction" between a detained alien and a prisoner that would require a different rule in habeas cases in the immigration context. Vasquez, 233 F.3d at 693; see also Nken, 607 F. Supp. 2d at 159; Roman, 340 F. 3d at 321.  Additionally, "Congress has provided that an application for a writ of habeas corpus shall allege . . . 'the name of the person who has actual custody over [the petitioner].'" Kholyavskiy, 443 F.3d at 948 (quoting 28 U.S.C. § 2242).  And once a writ is granted, it is to be directed to "the person" with custody of the detainee, which also indicates that there is only one proper respondent.  Vasquez, 233 F.3d at 693 (quoting 28 U.S.C. § 2243).  The identity of this person is implied in 28 U.S.C. § 2243, which states that "[t]he person to whom the writ is directed is 'required to produce at the hearing the body of the

8

person detained,'" as the person best able to produce the body is the immediate custodian, such as the warden. Id. (citing 28 U.S.C. § 2243); see also Roman, 340 F. 3d at 321. Lastly, the immediate custodian rule is "a practical one." Kholyavskiy, 443 F.3d at 949 (citing Sanders v. Bennett, 148 F.2d 19, 20 (D.C. Cir. 1945)). If detainees could name supervisory officials, this "would make the District Court for the District of Columbia the default forum for the habeas petitions of every federal prisoner in the United States." Id.

I find the reasoning of these courts persuasive, and thus agree that the immediate custodian rule bars Petitioner from naming respondents other than Mr. Crawford in this case.[4] Additional respondents are also unnecessary to grant Petitioner relief, as Respondent Crawford has made assurances that he will "will comply with any order of this Court, and will promptly communicate with all individuals necessary to implement any order of this Court." Resp't Resp. Amend. (ECF No. 21, at 13). Further Respondent's counsel "represents that all impacted agencies of the United States will follow any order issued by this Court on the Petition, regardless of whether or not any of the proposed respondents are added as parties to this action." Id. at 13 n. 5.

## B. Petitioner's Continued Detention Raises Due Process Concerns Warranting an Individualized Bond Hearing

Deng claims that his continued detention under § 1226(c) violates the Due Process Clause of the Fifth Amendment and seeks either immediate release from detention or an expedited bond hearing. After eleven months, Petitioner's prolonged detention raises due process concerns, which

---

[4] Some courts have held that the INS District Director can also be a proper respondent in cases such as this where a detainee is held in a facility that is not directly operated by the federal government. See, e.g., Roman, 340 F.3d at 320 (citing Henderson v. INS, 157 F.3d 106, 122 (2d Cir. 1998)); Masingene v. Martin, 424 F. Supp. 3d 1298, 1301-02 (S.D. Fl. Jan. 27, 2020); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1185 (N.D. Cal. Nov. 20, 2017). However, even in such cases, the warden or director is still the person with immediate custody. Such an exception is also unnecessary in this case where the government has already represented that it will follow any orders regarding Deng's detention which are directed to the Respondent. Resp't Resp. Amend. (ECF No. 21, at 13 n.5).

require weighing Deng's liberty interest against the government's justification for his continued detention.  After applying the factors laid out by this court in Portillo v. Hott, I find they weigh in favor of granting Deng a bond hearing, and accordingly recommend the court so direct.

### 1. Due Process Concerns of Petitioner's Prolonged Detention

Under the Due Process Clause of the Fifth Amendment, no person shall "be deprived of … liberty … without due process of law."  U.S. Const. amend. V.  "'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.' At the same time, however, [the Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  Demore v. Hyung Joon Kim, 538 U.S. 510, 523 (2003) (citing Reno v. Flores, 507 U.S. 292, 306 (1993)).

In Zadvydas, the Supreme Court considered a writ of habeas corpus filed by an immigration detainee held pursuant to 8 U.S.C. § 1231(a)(6), which governs the post-removal period of detention.  Zadvydas v. Davis, 533 U.S. 678, 688 (2001).  The Court acknowledged that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  Id. at 690.  Thus, the Court held that aliens should not continue to be detained awaiting removal if removal is not "reasonably foreseeable" and limited the presumptively reasonable period of detention to six months.  Id. at 699-701 (stating that although it doubted Congress believed all removals could be accomplished within 90 days that it had "reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months").

The Supreme Court subsequently distinguished Zadvydas in Demore v. Hyung Joon Kim, which addressed a due process challenge to detention under § 1226(c), the provision at issue in this case.  Demore, 538 U.S. at 527-30.  First, the Court noted that the petitioners challenging their detention in Zadvydas were ones for whom removal, though ordered, was "no longer practically

attainable." Id. at 527 (quoting Zadvydas, 533 U.S. at 690).  Zadvydas himself had been refused entry by multiple countries following his order of deportation and, the additional petitioner, Ma, could not be returned to a country that did not have a repatriation treaty with the United States. Zadvydas, 533 U.S. at 684-85.  Thus, detention did not serve the purpose of preventing them from avoiding removal.  Demore, 538 U.S. at 527.  Conversely, detention under § 1226(c) ensured that aliens would appear for their removal proceedings.  Id. at 527-28.  Second, the Court found Zadvydas to be materially different as detention under § 1231(a)(6) was "indefinite," whereas the Court stated that detention under § 1226(c) had a "definite termination point" of "a much shorter duration."  Id. at 528-29 (quoting Zadvydas v. Davis, 533 U.S. at 690-91).  The Court emphasized that detention under § 1226(c)—while awaiting an order of removal—was a brief detention with an average length of forty-seven days or four months if appealed to the Board of Immigration Appeals.  Id. at 529.  Thus, the Court did not find the petitioner's slightly longer six-month detention to be a violation of due process.  Id. at 530-31.  However, Justice Kennedy, in his concurrence, stated that if a "continued detention became unreasonable or unjustified," a detainee awaiting conclusion of removal proceedings "could be entitled to an individualized determination as to his risk of flight and dangerousness."  Id. at 532 (Kennedy, J., concurring).

Following Zadvydas and Demore, courts within this circuit have consistently held that prolonged detention under § 1226(c) can violate due process.[5]  See, e.g., Portillo v. Hott, 322 F.

---

[5] Many circuits previously also held that prolonged detention under § 1226(c) could violate due process. Jarpa v. Mumford, 211 F. Supp. 3d 706, 715-17 (D. Md. 2016) (listing cases). However, in Jennings v. Rodriguez, the Supreme Court overturned the Ninth Circuit's decision reading § 1226(c) as containing a six month limitation on an alien's detention. Jennings v. Rodriguez, 138 S. Ct. 830, 839 (2018). Since then, some circuits have reconsidered their previous decisions. See Sopo v. U.S. Att'y Gen., 825 F.3d 1199 (11th Cir. 2016), vacated, appeal dismissed as moot, 890 F.3d 952 (11th Cir. 2018) (dismissing the case as moot before the court could decide the impact of Jennings on the case); Reid v. Donelan, 819 F.3d 486 (1st Cir. 2016), withdrawn by, 2018 U.S. App. LEXIS 23859 (1st Cir. May 11, 2018)); Lora v. Shanahan, 804 F.3d 601 (2d Cir. 2015), cert. granted, vacated by, remanded by Shanahan v. Lora, 138 S. Ct. 1260 (2018); see also Bah v. Barr, 409 F. Supp. 3d 464, 471 n.8 (E.D. Va. 2019) (collecting cases).

Supp. 3d 698 (E.D. Va. July 3, 2018); Jarpa v. Mumford, 211 F. Supp. 3d 706 (D. Md. Sept. 30, 2016); Haughton v. Crawford, No. 1:16-cv-634 (LMB/IDD), 2016 WL 5899285 (E.D. Va. Oct. 7, 2016). The court in Portillo v. Hott, understood "Demore as applying the balancing test articulated in Zadvydas," which allows civil detention in certain narrow circumstances where special justification "outweighs the individual's constitutionally protected interest in avoiding physical restraint," Portillo, 322 F. Supp. 3d at 703, 705 (citing Zadvydas, 533 U.S. at 690 (internal quotation marks and citations omitted)), "rather than as establishing a bright-line rule justifying detention under § 1226(c), regardless of the length or circumstances." Id. at 705. Because the detention in Portillo had stretched longer than the six month detention in Demore, the Portillo court held that neither Zadvydas nor Demore could answer the balancing question and thus commenced to balance the factors generally applied by courts in determining the reasonableness of an alien's detention without a bond hearing. Id. 706-07. Courts within this circuit have since consistently followed such a balancing test in resolving similar claims brought by immigration detainees under § 1226(c). See Duncan v. Kavanagh, 439 F. Supp. 3d 579, 588-90 (D. Md. Feb. 10, 2020) (apply factors from Jarpa); Lizama Gutierrez v. Hott, 1:20-cv-712 (LMB/IDD), 2020 WL 4323157, at *3-6 (E.D. Va. July 27, 2020) (applying the Portillo factors); Urbina v. Barr, No. 1:20-cv-325

―――――――――――――――――

In Jennings, however, the Court was clear that it was addressing the language of the immigration provisions, not constitutional arguments. Jennings, 138 S. Ct. 830, at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits."). Therefore, the Jennings's decision did not say that prolonged detention under § 1226(c) cannot raise constitutional concerns. See Usama Jamil Hamama v. Adducci, 946 F.3d 875, 882-83 (6th Cir. 2020) (concurring) ("The Jennings Court explicitly declined to reach these constitutional issues." (citing Jennings, 138 S. Ct. at 851)); Borbot v. Warden Hudson Cty. Corr. Facility, 906 F.3d 274, 278 (3d Cir. 2018) ("Accordingly, Jennings did not call into question our constitutional holding in Diop that detention under § 1226(c) may violate due process if unreasonably long."); Duncan v. Kavanagh, 439 F. Supp. 3d 579, 588 (D. Md. 2020) ("The Supreme Court in Jennings, however, did not foreclose the possibility that unreasonably prolonged detention under § 1226(c) may violate due process." (citing Jennings, 138 S. Ct. at 851; Borbot, 906 F.3d 274 at 278; Obando-Segura v. Sessions, No. CV GLR-17-3190, 2018 WL 4384166, at *5 (D. Md. Sept. 14, 2018))).

12

(LMB/MSN), 2020 WL 3002344, at *5-7 (E.D. Va. June 4, 2020) (applying the five-factor balancing test); see also Bah v. Barr, 409 F. Supp. 3d 464, 470-71 (E.D. Va. Sept. 6, 2019) (focusing on the length of detention), appeal dismissed, No. 19-7653, 2020 WL 2126451 (4th Cir. Jan. 22, 2020); Obando-Segura v. Whitaker, No. GLR-17-3190, 2019 WL 423412, at *4 (D. Md. Feb. 1, 2019) (citing Jarpa, 211 F. Supp. 3d at 717; Haughton, 221 F. Supp. 3d at 715-16) (following Jarpa and Haughton and ordering a bond hearing due to the petitioner's "lengthy and indefinite detention"); Jarpa v. Mumford, 211 F. Supp. 3d 706, 717-20 (D. Md. Sept. 30, 2016) (balancing similar factors).

Like the petitioner in Portillo, who was detained for fourteen months without a bond hearing, Petitioner in this case has also been detained longer than the periods contemplated by the Supreme Court in considering brief detentions under § 1226(c). See Portillo, 322 F. Supp. 3d at 706-07; Amend Pet. (ECF No. 12, at 10). Thus, Petitioner's detention raises due process concerns that require weighing Petitioner's liberty interest against the government's justification for Petitioner's continued detention.

### 2. Balancing the Factors from Portillo v. Hott Suggests Deng is Entitled to an Individualized Bond Hearing

The five factors laid out by the court in Portillo are as follows:

(1) the duration of detention, including the anticipated time to completion of the alien's removal proceedings; (2) whether the civil detention exceeds the criminal detention for the underlying offense; (3) dilatory tactics employed in bad faith by the parties or adjudicators; (4) procedural or substantive legal errors that significantly extend the duration of detention; and (5) the likelihood that the government will secure a final removal order. Id. (citations omitted). Portillo, 322 F. Supp. 3d at 707.

Regarding the duration of detention, Deng has already been detained for eleven months, beginning on October 1, 2019. Amend Pet. (ECF No. 12, at 7). Additionally, he is likely to remain detained for significantly longer while he pursues his case to avoid removal. Id. (ECF No. 12, at

8, 10). Although Respondents are correct that <u>Demore</u> did not limit detentions to six months, "courts seem to agree that the constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past [the one and a half month average and six month maximum] thresholds cited by the Supreme Court in <u>Demore</u>." <u>Portillo</u>, 322 F. Supp. 3d at 707 (quoting <u>Haughton v. Crawford</u>, No. 1:16-cv-634 (LMB/IDD), 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016)).  The length of Deng's detention is also now approaching the point where courts within this district have granted a bond hearing.  <u>See, e.g.</u>, <u>Portillo</u>, 322 F. Supp. 3d at 707 (fourteen months); <u>Mauricio-Vasquez v. Crawford</u>, No. 1:16-CV-01422 (AJT/TCB), 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (fifteen months); <u>Haughton</u>, 2016 WL 5899285, at *9 (twelve months); <u>see also</u> <u>Mbalivoto v. Holt</u>, No. 1:20-cv-00827 (AJT/IDD), at *15 n.13 (E.D. Va. Aug. 11, 2020) (collecting cases).  As the length of detention is considered "the most important" factor, this factor weighs heavily in Deng's favor.  <u>Portillo</u>, 322 F. Supp. 3d at 707 (quoting <u>Haughton</u>, 2016 WL 5899285, at *9).

The second factor, the length of time served for the underlying criminal conviction in comparison to the amount of time in ICE custody, also weighs in Petitioner's favor.  Respondent urges this court to consider "all of Petitioner's detentions for his convictions in total," which exceed twenty-six months.  Resp't Resp. (ECF 15, at 14).  However, the second factor is not based on the totality of a detainee's convictions, but on the underlying offense "on which his current mandatory detention rests."  <u>Portillo</u>, 322 F. Supp. 3d at 707-08.  Petitioner's prior conviction in Georgia was the offense which first initiated removal proceedings against Petitioner.  <u>See</u> Trump Decl. ¶ 7 (ECF No. 15-2, at 2-3).  But the fact that Petitioner's case was administratively closed following his release by the Georgia Department of Corrections and the eight-year gap between Petitioner's release in October 2011 and his detention by ICE in October 2019 indicate that the

14

recent marijuana conviction is the conviction on which his immigration detention now rests. See id. ¶ 9 (ECF No. 15-2, at 3). In which case, Petitioner has been detained for eleven months based on a conviction for which he received a 60-day active sentence. See Amend. Pet. (ECF No. 12, at 6). Additionally, even if Petitioner's 2011 convictions are considered, petitioner has been detained eleven months, which is a "substantial" portion of twenty-six month total and thus would also weigh in Petitioner's favor. See Mauricio-Vasquez v. Crawford, No. 1:16-CV-01422 (AJT/TCB), 2017 WL 1476349, at *4 (E.D. Va. Apr. 24, 2017) (finding a fifteen month detention based on a three year criminal detention to weigh in favor of the petitioner).

The third factor looks to whether the parties have engaged in dilatory tactics in bad faith. This factor does not weigh in favor of either party. It is undisputed that Deng did not receive a hearing from October 1, 2019, when he was taken into ICE custody, until May 26, 2020, when he appeared before an Arlington Immigration Court. Amend. Pet. (ECF No. 12, at 7); Trump Decl. ¶ 15, 21 (ECF 15-2, at 4-5). But there is no indication that this delay was the result of bad faith, as during this time DHS consistently pursued Deng's case. Trump Decl. ¶ 16-20 (ECF 15-2, at 4-5). Deng also continued the case several times to raise the question of competency and to obtain counsel. Trump Decl. ¶ 21-24 (ECF 15-2, at 5). Having recently obtained counsel, Deng is not yet ready to move forward with his case. Amend. Pet. (ECF No. 12, at 8). Although Petitioner's delay in obtaining counsel and raising defenses to removal have both lengthened the proceedings, courts have rejected the implication that a detainee should be punished for pursuing legal remedies with detention for the duration of the proceedings. See Lizama Gutierrez v. Hott, 1:20-cv-712 (LMB/IDD), 2020 WL 4323157, at *4 (E.D. Va. July 27, 2020) ("Appeals and petitions for relief are to be expected as a natural part of the process and an alien cannot be detained indefinitely merely because he seeks to explore avenues of relief that the law makes available to him." (quoting

15

Haughton v. Crawford, No. 1:16-cv-634 (LMB/IDD), 2016 WL 5899285, at *9 (E.D. Va. Oct. 7, 2016)); Urbina v. Barr, No. 1:20-cv-325 (LMB/MSN), 2020 WL 3002344, at *7 n.9 (E.D. Va. June 4, 2020) (also quoting Haughton, 2016 WL 5899285, at *9).

The fourth factor asks whether there are procedural or substantive legal errors responsible for significantly extending the detainee's detention. Petitioner asserts that his case was initially lost for seven months due to a "clerical error." Pet.'s Reply (ECF No. 19, at 11). During this time, DHS asserts that they repeatedly sought information and requested a change of venue from the Atlanta Immigration Court. Trump Decl. ¶ 16-20 (ECF 15-2, at 4-5). The Atlanta Immigration Court may have contributed to the initial delay in failing to respond to DHS requests, a factor which would weigh heavily in Petitioner's favor. See Pet.'s Reply (ECF No. 19, at 12-13). But due to the uncertainty surrounding responsibility for the delay, I do not give it much weight.

Finally, the last factor considered in Portillo is the likelihood that the government will secure a final order of removal against Petitioner. Unlike some cases that courts in this circuit have addressed, here there is less certainty about whether Petitioner will ultimately prevail in his case to remain in the United States. See, e.g., Portillo v. Hott, 322 F. Supp. 3d 698, 708 (E.D. Va. 2018) (noting that "the current prospects for [the detainee] to succeed on his application for withholding of removal do not appear especially strong," as the Board of Immigration Appeals had sustained ICE's appeal); Jarpa v. Mumford, 211 F. Supp. 3d 706, 718 (D. Md. 2016) (discussing how the detainee had already prevailed before an immigration judge and was merely being held while the government appealed). Deng intends to defend against deportation by filing a 209(c) waiver claim, that the CAIR Coalition considers Petitioner to have a viable claim, and that the American University Washington College of Law Immigration Justice Clinic has agreed to take on his case. Pet.'s Reply (ECF No. 19, at 13). However, he has not yet filed an application for a 209(c) waiver.

16

Trump Decl. ¶ 27 (ECF 15-2, at 6). Respondent also raises substantive questions of whether Petitioner will succeed in obtaining a waiver due to his previous drug convictions under Matter of Jean, 23 I. & N. Dec. 373 (AG 2002), which bars individuals who have committed "violent or dangerous crimes" from relief under a 209(c) waiver except in extraordinary circumstances. Resp't Resp. (ECF No. 15, at 16 n.9) (citing Matter of Jean, 23 I. & N. Dec. 373 (AG 2002); Matter of U-M-, 20 I. & N. Dec. 237, 275-76 (BIA 1991)).[6] Due to Petitioner's past convictions and the relief he seeks, I cannot speculate how Petitioner's case will resolve, especially as it has yet to be heard by an immigration judge. See Mauricio-Vasquez v. Crawford, No. 1:16-CV-01422 (AJT/TCB), 2017 WL 1476349, at *5 (E.D. Va. Apr. 24, 2017) ("It is purely speculative to say what the [immigration judge] will do."). However, he is in a better posture procedurally than some detainees who have obtained a bond hearing. See, e.g., Urbina v. Barr, No. 1:20-cv-325 (LMB/MSN), 2020 WL 3002344, at *7 (E.D. Va. June 4, 2020) (granting an individualized bond hearing where the Board of Immigration Appeals ("BIA") had held the detainee removable, but remanded the case to an Immigration Judge to enable the detainee to seek cancellation of removal); Portillo, 322 F. Supp. 3d at 708 (granting an individualized bond hearing although the BIA had sustained ICE's appeal against the detainee). This factor thus weighs slightly in Deng's favor. Because the other factors – particularly the length of detention – either weigh in Deng's favor or are neutral, I find that his detention has become unreasonable and that Petitioner, while not entitled to immediate release, is entitled to a bond hearing.[7]

---

[6] Petitioner argues that the Respondent's reliance on Matter of U-M- to support that the Petitioner has been convicted of "violent or dangerous crimes," which would bar his claim for a 209(c) waiver is misplaced, as Matter of U-M- involved a different standard. Pet.'s Reply (ECF No. 19, at 14). However, it is not necessary to address this argument here.

[7] In addition to the Portillo factors, Petitioner urges this court to consider the existence of COVID-19 as an additional factor. Amend. Pet. (ECF. No. 12, at 13-14); Pet.'s Reply (ECF No. 19, at 16). Courts within this district have at times done so. See, e.g., Mbalivoto v. Holt, No. 1:20-cv-00827 (AJT/IDD), at *16 (E.D.

## C. What Standard Should be Applied at Petitioner's Bond Hearing

The Fourth Circuit has yet to address the issue of who bears the burden of proof and the quantum of proof that must be provided at an individualized bond hearing ordered under § 1226(c).[8] However, in United States v. Comstock, the Fourth Circuit upheld a civil commitment statute that placed the burden of "clear and convincing evidence" on the government. Jarpa, 211 F. Supp. 3d at 721-22 (quoting United States v. Comstock, 627 F.3d 513, 515 (4th Cir. 2010)). Following this logic, the court in Jarpa held that the government must show by clear and convincing evidence that a detainee poses a risk of flight or a danger to the community to continue to detain him. Id. at 722. In reaching this conclusion, the court noted that placing the burden on a detainee "would be inconsistent with having found his continued detention unconstitutional." Id. at 722-23.

The courts within the Eastern District of Virginia have consistently held the same. See, e.g., Mbalivoto v. Holt, No. 1:20-cv-00827 (AJT/IDD), at *17-18 (E.D. Va. Aug. 11, 2020)

---

Va. Aug. 11, 2020) (weighing COVID-19 as a "humanitarian consideration[]"); Lizama Gutierrez v. Hott, 1:20-cv-712 (LMB/IDD), 2020 WL 4323157, at *4 n.8 (E.D. Va. July 27, 2020) (quoting Urbina v. Barr, No. 1:20-cv-325 (LMB/MSN), 2020 WL 3002344, at *7 n.9 (E.D. Va. Jun. 4, 2020)). However, the decreasing number of cases of COVID-19 at ICA Farmville and the fact that Petitioner has not alleged any preexisting conditions or special factors which make him at risk for serious illness suggest this factor is not critical to the analysis of Deng's due process claims. See Resp't Resp (ECF No. 15, at 17); Ex. A of Mot. for Leave to File Supp. Decl., Santos Garcia et al. v. Wolf et al., 1:20-cv-00821-LMB-JFA (E.D. Va . Aug. 28, 2020) ¶ 3-4 (ECF No. 63-1).

[8] Respondents argue that the Petitioner should bear the burden of proof at any bond hearing by pointing to Jennings and Guzman Chavez. Resp't Resp. (ECF No. 15, at 18-20) (citing Jennings, 138 S. Ct. 839 (2018); Guzman Chavez v. Hott, 940 F.3d 867 (4th Cir. 2019)). However, this court has repeatedly found that Jennings and Guzman Chavez do not address the constitutional issue, only the statutory one. See Portillo, 322 F. Supp. 3d at 709 & n.9 (E.D. Va. 2018) (explaining that Haughton "remains good authority [after Jennings] and is, in any event, persuasive on the merits."); Urbina, 2020 WL 3002344, at *7 n.10 (citing Portillo, 322 F. Supp. 3d at 709 & n.9) (explaining that Bah and Portillo remain good law, becuase Jennings and Guzman Chavez did not reach the constitutional question). Specifically, Guzman Chavez focused on the statutory language of § 1226, which the court held governed the detention of aliens subjected to reinstated removal orders who sought withholding of removal, and the hearing procedures allowed by statute under § 1226. Guzman Chavez, 940 F.3d at 869, 873-74.

(addressing bond hearings for detainees held under § 1225(b)) (citing Bah v. Barr, 409 F. Supp.

3d 464, 472-73 (E.D. Va. Sept. 6, 2019), appeal dismissed, No. 19-7653, 2020 WL 2126451 (4th

Cir. Jan. 22, 2020)); Lizama Gutierrez v. Hott, 1:20-cv-712 (LMB/IDD), 2020 WL 4323157, at

*5 (E.D. Va. July 27, 2020) (citing Bah, 409 F. Supp at 472; Portillo v. Hott, 322 F. Supp. 3d

698, 709 (E.D. Va. July 3, 2018)); Urbina v. Barr, No. 1:20-cv-325 (LMB/MSN), 2020 WL

3002344, at *7 (E.D. Va. June 4, 2020) (citing Bah, 409 F. Supp at 472). But see Palomares-

Gastelum, 1:19-cv-01428 (RDA/TCB), ECF No. 28, at *16-18 (E.D. Va. Feb. 19, 2020) (placing

the burden of proof on the alien based on Mauricio-Vasquez v. Crawford and Guzman Chavez v.

Hott); Mauricio-Vasquez v. Crawford, No. 1:16-CV-01422 (AJT/TCB), 2017 WL 1476349, at

*6 (E.D. Va. Apr. 24, 2017).[9] As one court in this district succinctly explained:

> As a practical matter, an alien who receives a bond hearing bears an initial burden of
> production to come forward with evidence that favors release.  The petitioner is best
> situated to produce evidence on issues such as his ties to the United States, family
> connections, and employment history. *As a matter of Due Process, the government bears*
> *the ultimate burden of persuasion.*  In criminal pre-trial bond hearings, Due Process
> requires the government to prove 'that no condition or combination of conditions will
> reasonably assure the appearance of the person as required and the safety of any other
> person and the community. Due Process does not require a different allocation of the
> burden of persuasion here. The government must prove "to the satisfaction of the [IJ] that"
> no condition or combination of conditions, including electronic monitoring, will
> reasonably assure the appearance of the person as required and the safety of any other
> person and the community. Although a criminal pre-trial bond hearing requires proof by
> clear and convincing evidence, … proof to the satisfaction of the immigration judge may
> be equivalent to clear and convincing evidence in many cases. Bah, 409 F. Supp. 3d at 472-
> 73 (internal citations omitted) (emphasis added); see also Mbalivoto, No. 1:20-cv-00827
> (AJT/IDD), at *17-18 (quoting id.).

Thus, as a matter of due process, the government must prove by clear and convincing

evidence that Petitioner is a flight risk or a danger to the community to justify continuing to hold

---

[9] In his more recent opinion, Mbalivato v. Holt, Judge Trenga explained that the "debate has continued
since the Court's decision in Mauricio-Vasquez" and placed the burden of proof on the government.
Mbalivoto, No. 1:20-cv-00827 (AJT/IDD), at *17.

Petitioner without bond under § 1226(c).

### III.   CONCLUSION AND RECOMMENDATIONS

Based the immediate custodian rule, I recommend that the court DENY Petitioner's motion for leave to amend his Amended Petition to include additional respondents.  However, for the reasons explained in detail above, I also recommend that the court GRANT Petitioner's Amended Petition for a writ of habeas corpus, ECF No. 12, and order that Deng be provided with an individualized bond hearing at which the government bears the burden of justifying his continued detention by clear and convincing evidence.

### IV.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.  Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail.  A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof.  See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court

based on such findings and recommendations.  Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto,

737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

September 30, 2020